ARNOLD, In re.  See Case No. 17,118.

---

## Case No. 552.

### ARNOLD v. BISHOP et al.

[1 MacA. Pat. Cas. 27; Cranch, Pat. Dec. 103.]

Circuit Court, District of Columbia. Oct., 1841.

PATENTS FOR INVENTIONS—JOINT INVENTORS—INTERFERENCE—PROCEDURE.

[1. One who reduces to practice the theory of another, with the help of the latter, cannot be considered as the sole inventor of the machine or device; · and, if such a one could be regarded as the originator of the invention, his right to a patent would be lost, when it appears that such machine had been in public use for more than two years before the filing of the application.]

[2. An objection that the officer before whom a deposition by a joint inventor in opposition to an application for a patent was taken failed

---

[1][Printed "decline" in 2 N. B. R. 167, octavo edition, but in the quarto it is given as "incline."]

to certify thereon that it was sealed by him, as required by the rules in force in the patent office, is sufficient ground for the exclusion of the deposition from the consideration of the commissioner.]

[Appeal from decision of the commissioner of patents rejecting an application for letters patent. Affirmed.]

Upon the final hearing of this interference the commissioner, the Hon. H. L. Ellsworth, made the following order: "The commissioner, as at present advised, considers from the joint operations of Arnold, Bishop, and Aiken that neither can consistently claim the whole, and that, since they all advisedly aided and consulted together in the progress of the matter, justice will be promoted by suspending a patent to either separately, and informing them that it is considered a joint invention; and inasmuch as the company claim that Arnold and Bishop unitedly and separately have bound themselves to convey all improvements on the machine first patented and sold to the company, the parties will be heard why the present patent should not issue on a petition to the company, provided Aiken, who was not a party to the covenant, assents to the same; and as the commissioner is verbally informed, Mr. Aiken consents."

From this order or decision appeal was taken to the court by Arnold, who alleged that the conclusions of the commissioner were erroneous in fact and were based upon testimony which was not competent or admissible under the rules of the office. The rules of the office referred to in the decision were as follows:

"Rules for Taking and Transmitting Evidence, &c., to the Commissioner of Patents.

"1st. That all statements, declarations, evidence, &c., shall be in writing, setting forth minutely and particularly the point or points at issue, and shall be verified by oath or affirmation.

"2d. That all statements, declarations, proofs, and evidence shall be filed in the patent office by the parties respectively before the day of hearing.

"3d. That before the deposition of a witness or witnesses be taken by either party notice shall be given to the opposite party of the time and place, when, and where such deposition or depositions will be taken, so that the opposite party, either in person or by attorney, shall have full opportunity to cross-examine the witness or witnesses. And such notice shall, with proof of service of the same, be attached to the deposition or depositions whether the party cross-examine or not; and such notice shall be given in sufficient time for the appearance of the opposite party and for the transmission of the evidence to the patent office before the day of hearing.

"4th. That no evidence, statement, or declaration touching the matter at issue will be considered upon the said day of hearing

which shall not have been taken and filed in compliance with these rules: Provided, that if either party shall be unable, from good and sufficient reasons, to procure the testimony of a witness or witnesses within the above-stipulated time, then it shall be the duty of said party to give notice of the same to the commissioner of patents, accompanied with statements of the cause of such inability, which last mentioned notice to the commissioner shall be received by him —— days previous to the day of hearing aforesaid, viz., the —— day of —— next.

"5th. That all evidence, &c., shall be sealed up and transmitted to the commissioner of patents by the persons before whom it shall be taken, and so certify thereon."

Thos. P. Jones, for. appellant.
Mr. Morfit, for appellee,
Mr. Fitzgerald, for commissioner.

CRANCH, Chief Judge. On the 19th of September, 1840, John Arnold made application for a patent for his invention of a "new and useful manner for forming the web of felt-cloth and web for other purposes," and in October following complied with the other requisites of the act of the 4th of July, 1836. A caveat, however, had been entered, by George G. Bishop and John Aiken, who claimed to be joint inventors with the said John Arnold of the same machine; and on the 20th of March, 1841, the said Bishop and Aiken made application by petition for a patent for the same invention in the name of the said Bishop, Aiken, and John Arnold, averring it to be the joint invention of the three. The commissioner, on the 30th of March, 1841, decided them to be interfering claims, and notice was given to the parties by the commissioner that he would hear them on the second Monday in May, 1841, and they respectively took the depositions of several witnesses. On the 16th of June, 1841, the commissioner decided that it was to be considered a joint invention, and that neither of the parties can claim the whole, and rejected the application of all the applicants. From this decision Mr. Arnold has appealed; and the reasons stated are, in effect, that the commissioner has considered and acted upon evidence not competent according to the general rules of law, and upon testimony not taken according to the regulations prescribed and promulgated by himself; and that, independent of the evidence thus objected to, there is not sufficient evidence to establish the fact of joint invention. And Mr. Arnold's attorney asks leave to be further heard if his objections to the evidence should be overruled.

The evidence objected to consists of—

1. John Aiken's ex-parte affidavit in support of the same joint claim.

2. Letters from Mr. Rowley to the commissioner of patents, dated, respectively, March 15th, May 2d, and June 9th, 1841.

3. George G. Bishop's letters to the commissioner of 7th of May and 12th of June, 1841.

4. Mr. Rowley's deposition.

One of the objections to the deposition of Mr. Rowley is that the commissioner of deeds before whom the deposition was taken has not certified upon the deposition, according to the third rule, that it was sealed up by him. By the act of March 3d, 1839, section 12, it is enacted "that the commissioner of patents shall have power to make all such regulations in respect to the taking of evidence to be used in contested cases before him as may be just and reasonable." Under this authority, the commissioner made out and promulgated the following rules: (See statement of the case.) The first of these rules is evidently intended to apply to the initiatory proceedings in applications for patents and to uncontested cases where the commissioner may consider all the circumstances which may come to his knowledge. The other rules, viz., the second, third, fourth, and fifth, are applicable to contested cases where parties are to be heard; and in such cases, inasmuch as each party is bound by the rules, each party is also entitled to the benefit of them. The fourth rule says "that no evidence, statement, or declaration touching matters at issue will be considered upon the same day of hearing which shall not have been taken and filed in compliance with these rules." This is a restraint imposed upon the commissioner himself as much as if the very words of the rule had been contained in the statute; for the rules, made in conformity with the law, while they remain unabrogated, are as binding as the law itself. The rule is an assurance, an engagement, by the commissioner that he will not at the hearing consider any evidence not taken and filed in compliance with these rules, one of which was that the person taking the deposition should certify thereon that it was sealed up by him. This is, not an immaterial form. It is a security that the deposition has not been altered after it left the hands of the magistrate before whom the deposition was taken. In the rules which the commissioner has promulgated he has not reserved any right to dispense with them in particular cases at his pleasure. After a deposition was taken while the rules were in force his dispensation cannot affect that deposition. A revocation of the rules can affect only subsequent proceedings. After a contest has arisen, the parties have a right to insist, not only that the evidence should be taken agreeably to the rules prescribed by the commissioner, but that it should be evidence competent in law. It is one of the rules in law that no man can be a witness in his own cause, unless made competent by statute, or by being called upon by the opposing party to answer upon oath, as in cases in equity and admiralty jurisdiction, &c.

If the witness is interested, he is excluded,.

however small the amount of interest may be.

Objection was made to the taking of the deposition of Mr. Rowley at the time of taking it because of his interest, and because the notice was too short, because the magistrate was not named before whom the deposition was taken, and because the time was so late that Mr. Arnold would not have time to take countervailing testimony. The interest of Mr. Rowley in the patent right is the same, whether the patent should be granted to Mr. Arnold alone or jointly to the three applicants; for his only interest is as a member of the company, to whom all the applicants have bound themselves to convey the patent right when obtained. If the covenants do not cover the claim for a patent, then Mr. Rowley is not interested at all. If they do cover it, then it is immaterial to him which of the claimants obtain the patent.

The objection to the shortness of the notice is answered by the fact that Mr. Arnold did appear at the time and place, and cross-examined the witness. The lateness of the time is no cause for rejecting the deposition, but it might, perhaps, have been good ground for an application to the commissioner of patents to allow further time for taking other testimony which he might deem important in the cause.

But the objection that the magistrate before whom the deposition was taken did not certify thereon that it was sealed up by him is sufficient ground for excluding that deposition from the consideration of the commissioner of patents.

This evidence, then, being excluded, there remains only, on the part of Messrs. Bishop and Aiken, the deposition of Mr. Lownsberry. This deposition is admitted to have been taken and transmitted according to the rules; but it is said that it shows Mr. Lownsberry to be so interested as to be an incompetent witness. In that respect, however, he stands on the same ground with Mr. Rowley, and the same answer is applicable to him.

It appears by his deposition that the idea of crossing the wool diagonally was suggested by Mr. Bishop and Mr. McLean, or one of them, before Arnold was applied to or had any connection with the company in which Lownsberry, Bishop, and McLean were concerned: that upon the recommendation of Mr. Moulton, Bishop, as agent of the company, applied to Arnold to make the necessary machinery, who undertook the work, and was to have one-fifth of the profits; that he made a machine for crossing wool at right angles, and obtained a patent for it in 1829 or 1830, which was afterwards improved by him and Bishop, who obtained a patent for the improvement in their name; that Bishop frequently, from 1828 to 1837, urged the building of a machine to cross the wool diagonally, to which

Mr. Lownsberry was opposed; the machine, however, was built in 1837, by Arnold and Aiken for the company, who paid them for building it; it has always been in possession of the company, and owned by them; that the machine is the same spoken of by Alonzo C. Arnold in his deposition, and the model of which was sent to the patent office by Bishop in March, 1884; that one objection to adopting the diagonal machine was, that it would interfere with a patent machine then in operation at Catskill, but the right-angled machine did not interfere, and made a better article; that the claim of Bishop and Aiken is made for the benefit of the company, and whether the patent be taken out in the joint name of Bishop, Aiken, and Arnold, or of Arnold alone, the benefit of it is to be assigned and transferred to the company under certain covenants entered into by all of them to the company; and copies of these covenants are filed with the papers in this cause. He does not know who invented the machine built by Arnold in 1837, but it is the same mode which had been agitated by Bishop, and occasionally by Arnold, during their connection in business; that Aiken suggested alterations while the machine in 1837 was putting up, and after it was up, to make it go better; that he did the greater part of the work; cannot explain the alterations nor the difficulties to be overcome, but it did not operate at all. It seems to me that there is enough in this deposition to show that Mr. Arnold was not the sole inventor of the principle of crossing the wool diagonally, or the machine for reducing that principle to practice; and if not the sole inventor, he is not entitled to a patent.

There is no claim before me upon this appeal but that of Mr. Arnold. Bishop and Aiken have not appealed from the decision of the commissioner rejecting their joint claim. It appears by Lownsberry's deposition that the principle or mode of crossing the wool diagonally was suggested and contemplated by Bishop and McLean before Arnold was employed by them to reduce their ideas to practice. The machine did not constitute the whole invention. The next material part of the invention was the principle, i. e., the diagonal motion, which was to distinguish this machine from all other felting machines; and it is the vibratory and rotary motions which produce the diagonal crossing of the wool which Mr. Arnold claims as his invention, and for which he asks a patent. The man who reduces to practice the theory of another who assists in the reduction of it to practice cannot be considered as the sole inventor of the machine. Arnold would not have made the machine unless informed by Bishop of the discovery he had made of the effect of the diagonal crossing of the wool. The invention consisted both of the discovery of the principle and the reduction of it to prac-

tice. Neither Bishop nor Arnold, therefore, could be considered as sole inventor. It appears also by the deposition of Henry Lamb, taken by Mr. Arnold, that the machine when first put up "would not go;" that Aiken went up to remedy the defect, and that the witness afterwards saw it in operation in the fall of 1837 or spring of 1838; and that he never heard Arnold claim the patent right until within a year.

I see nothing in the deposition of Alonzo C. Arnold inconsistent with the facts stated by Mr. Lownsberry in his deposition; but if there were, Alonzo C. Arnold seems by his own showing to be interested by the promise of his father to give him a share in the patent if it should be obtained; for, although afterwards, in answer to the leading question, he said the agreement was abandoned, yet it is in evidence in the preceding part of his deposition that he thought it depended upon his generosity whether he should have an interest in the patent when obtained. If this interest, however, was not sufficiently certain to exclude his testimony, it cannot fail to have some effect upon his credibility. But he states that the machine was put in operation in 1837, and his father never spoke with him about getting the patent now applied for until the summer of 1840, and after his father had ceased to be a member of the Union Manufactory, which claims the benefit of the patent under the agreement before mentioned if it should be obtained by either or all of the claimants. It may be inferred from this that, so long as he remained a member of the company, he did not claim a sole right, or any right, to the invention. Another strong argument that he did not claim to be the inventor during those three years results from his suffering the machine to be set up and used during that period without taking any steps to procure a patent, when, by the terms of the acts of 1836 and 1839, the use of the machine, with his consent, for two years prior to his application is a bar to his claim. The fact, indeed, seems to be a bar to all other claims, and to put an end to this controversy; for if a patent should now be granted to any of them, and an action should be brought by the patentee for a violation of the patent right, it seems that the defendant might defend himself under the fifteenth section of the act of 1836 and the seventh section of the act of 1839, by showing that the machine had been in public use, with the consent of the patentee, for more than two years prior to the application for the patent.

It is suggested in the reasons of appeal that if the decision of the commissioner is sustained, there does not seem to be any possible mode of determining this question, and that it is only by granting the patent to Arnold that the rights of the individuals interested and of the public can be determined according to the intention of the acts of congress for the promotion of the useful arts. But upon comparing the sixteenth section of the act of 1836 with the eleventh section of the act of 1839 it will appear that "in all cases where patents are refused for any reason whatever, either by the commissioner of patents or by the chief justice of the District of Columbia, upon appeals from the decision of said commisioner, the 'applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties, and other due proceedings had,' may adjudge that such applicant is entitled, according to the principles and provisions of the act of 1836, to have and receive a patent for his invention, as specified in his claim; and such adjudication, if it be in favor of the right of such applicant, shall authorize the commissioner to issue such patent on his filing a copy of the adjudication and otherwise complying with the requisitions of that act." The reservation of a right to a further hearing on the part of Mr. Arnold's attorney was confined to the case of my admitting the evidence which he objected to; and as I have rejected that evidence, any further hearing is unnecessary.

Upon the whole, then, after rejecting the evidence, I am of opinion that Mr. Arnold has not supported his claim as sole inventor, and that if he had he has lost his right to a patent, for suffering the machine to be in use for more than two years before his application for a patent; and that, therefore, and upon both grounds, the decision of the commissioner of patents rejecting his claim ought to be, and it is hereby, affirmed.